TINGLEY v 900 MONROE LLC (ON REMAND)

Docket No. 243171. Submitted August 1, 2006, at Lansing. Decided February 22, 2007, at 9:10 a.m. Leave to appeal sought.

William Q. Tingley, III, William Q. Tingley, Daniel R. Bradley, and their respective business enterprises brought an action in the Kent Circuit Court against attorney Robert F. Wardrop, II, among other attorneys and law firms; developers Pioneer Incorporated and others; the city of Grand Rapids, and its then-mayor, John H. Logie, alleging, among other things, violations of the environmental response act, MCL 324.20101 *et seq.*, and the hazardous waste management act (HWMA), MCL 324.11101 *et seq.*, in connection with the excavation and removal of hazardous waste from a site adjacent to the plaintiffs' businesses. The trial court, H. David Soet, J., granted summary disposition as well as sanctions to the defendants, and the plaintiffs appealed. The Court of Appeals affirmed in part, reversed in part, and remanded for further proceedings, holding that the trial court erred in dismissing the plaintiffs' HWMA claim. 266 Mich App 233 (2005). The Supreme Court, in lieu of granting leave to appeal, vacated the judgment and remanded the case to the Court of Appeals for reconsideration in light of *National Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608 (2004), and the plaintiffs' second amended complaint. *Tingley v Wardrop*, 474 Mich 1104 (2006).

On remand, the Court of Appeals *held*:

A remand is required for the dismissal of the plaintiffs' second amended complaint in its entirety. WILDER, J., stated that the allegations in the plaintiffs' second amended complaint do not support a finding that the plaintiffs had standing to bring suit against the defendants under the HWMA; therefore, their action must be dismissed. Although the complaint alleges generally that the defendants violated various provisions of the HWMA, resulting in contamination of the environment and human exposure to hazardous substances, the plaintiffs' affidavits did not allege or make any showing that the defendants' actions resulted in actual, particularized injury to the plaintiffs, that a causal connection existed between the defendants' actions and any injuries, and that it was likely that those injuries would be redressed by a favorable

decision. Viewing, in a light most favorable to the plaintiffs, the allegation that one of the defendants dumped contaminated soil on the plaintiffs' vehicles, it states a particularized injury; however, the plaintiffs have not shown that it is likely that this particular injury would be redressed by a decision in their favor to the effect that defendants violated the HWMA.

Remanded.

METER, J., concurred in the result only.

BORRELLO, J., dissenting, would hold that when the Legislature exercises its traditional role of creating causes of action, it can at the same time announce a particularized injury without interfering with the court's traditional role of ascertaining standing; therefore, this case should be remanded to the trial court to allow the plaintiffs to proceed with their claims.

William Q. Tingley, III, William Q. Tingley, and Daniel R. Bradley, in propria persona.

*Murphy, Brenton & Spagnuolo, P.C.* (by *Gary L. Bender, Samuel J. Frederick,* and *Matthew C. Rettig*), for William Q. Tingley and William Q. Tingley, III.

*Schenk, Boncher & Rypma* (by *Gary P. Schenk*) for Dykema Excavators, Inc.

*Fisher & Dickinson P.C.* (by *Todd R. Dickinson*) for 900 Monroe, L.L.C., 940 Monroe, L.L.C., and Pioneer Incorporated.

*Daniel A. Ophoff* and *Catherine M. Mish*, Assistant City Attorneys, for the city of Grand Rapids and John H. Logie.

*Dickinson Wright PLLC* (by *Edward P. Perdue*) for Dickinson Wright.

*Dykema Gossett PLLC* (by *John A. Ferroli* and *Mark D. van der Laan*) for Fifth Third Bancorp.

*Wardrop & Wardrop, P.C.* (by *Thomas M. Wardrop* and *Brian L. Groen*), for Robert F. Wardrop, II.

ON REMAND

Before: METER, P.J., and WILDER and BORRELLO, JJ.

WILDER, J. Our Supreme Court has vacated this Court's previous judgments in this case and remanded this matter for reconsideration in light of *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608; 684 NW2d 800 (2004), and plaintiffs' second amended complaint.[1] On remand, we conclude that plaintiffs' second amended complaint should be dismissed in its entirety.

This case, which has a long and complex history, arose out of a property dispute over the use of an abandoned street that runs adjacent to the building that houses corporate plaintiffs Proto-Cam, Inc., Bend Tooling, Inc., and Tennine Corporation.[2] In 1999 and 2000, defendants 900 Monroe, L.L.C., 940 Monroe, L.L.C., and Pioneer, Inc., were renovating the Berkey & Gay (B&G) building site, a former factory located adjacent to the corporate plaintiffs' site. In August 2000, corporate plaintiffs Proto-Cam and Tennine sued 940 Monroe and Pioneer, alleging trespass and seeking injunctive relief and damages. The trial court awarded

[1] On November 26, 2002, this Court entered an order consolidating the instant case with *Tingley v 900 Monroe, LLC*, Docket No. 244609, plaintiffs' appeal of the trial court's orders granting sanctions to certain defendants. Defendants filed applications for leave to appeal in the Supreme Court regarding this Court's decision in the instant case only, and this remand concerns only the instant case.

[2] Plaintiffs William Q. Tingley, III, William Q. Tingley, and Daniel R. Bradley are officers and directors of plaintiff corporations.

plaintiffs permanent injunctive relief and damages, and this Court affirmed that decision.[3]

In June 2002, plaintiffs filed a 44-page amended complaint naming as defendants 900 Monroe, 940 Monroe, the city of Grand Rapids (the City), John H. Logie (then the mayor of Grand Rapids), Dykema Excavators, Inc., Fifth Third Bancorp (Fifth Third), Dickinson Wright, PLLC, Robert F. Wardrop, II, William J. Fisher, III, and Todd R. Dickinson. Essentially, the complaint alleged that defendants conspired to remove hazardous waste from the B&G site and deposit it at a water filtration plant in violation of the environmental response act (ERA), MCL 324.20101 *et seq.*, and the hazardous waste management act (HWMA), MCL 324.11101 *et seq.* In count I, the individual plaintiffs alleged that the developer defendants and Fifth Third, the city, Logie, and Dykema violated the ERA at the B&G site, and that the developer defendants, Dickinson Wright, Dykema, and Fisher made false statements to the Department of Environmental Quality and other agencies. In count II, the individual plaintiffs alleged that the same defendants violated the ERA at the water filtration plant. In count III, the individual plaintiffs alleged that the developer defendants and Dykema, Fifth Third, the city, and Logie violated the HWMA. In count IV, the individual plaintiffs alleged that defendants committed a fraud on the court. In count V, the individual plaintiffs alleged that various defendants conspired to remove hazardous waste, conceal their actions, and engage in retaliation against plaintiffs. In count VI, the individual plaintiffs alleged that the attorney defendants committed an abuse of process in the prior case.

---

[3] *Proto-Cam Inc v 940 Monroe LLC*, unpublished opinion per curiam of the Court of Appeals, issued December 16, 2004 (Docket No. 251387).

Counts VII and VIII alleged unjust enrichment against various defendants. Count IX requested exemplary damages.

Various defendants moved for summary disposition. The trial court dismissed all counts in the amended complaint for different reasons. In particular, the trial court dismissed count III, alleging violation of the HWMA; count V, alleging conspiracy; and count IX, seeking exemplary damages, on the grounds that the individual plaintiffs were not the real parties in interest and that Tingley, III, who is not an attorney, engaged in the unauthorized practice of law by representing the corporate plaintiffs and Tingley and Bradley.

Subsequently, various defendants moved for sanctions. The trial court granted the motions.

The individual plaintiffs appealed the trial court's order dismissing their complaint[4] and the orders granting sanctions.[5] This Court consolidated the appeals.[6]

On June 24, 2004, this Court issued opinions in a related case, *Tingley v Kortz*, 262 Mich App 583; 688 NW2d 291 (2004),[7] and in the consolidated appeals. In the latter opinion, this Court affirmed in part and reversed in part the trial court's decision, and remanded for further proceedings. In pertinent part, this Court held that the trial court erred by dismissing count III of the complaint, which alleged that defendants violated the HWMA, on the ground that plaintiffs

---

[4] The corporate plaintiffs were not parties to the appeal.

[5] The claim of appeal was untimely with respect to all sanction orders save that awarding $1,185.79 to the city and Logie.

[6] See n 1.

[7] This case concerned an appeal by Tingley, III, of an order entered by the chief judge of the Kent Circuit Court regarding Tingley's ability to file further litigation. *Tingley v Kortz*, 262 Mich App 583; 688 NW2d 291 (2004). This case is not relevant to the remand currently before this Court.

were not the real parties in interest. This Court held that MCL 324.11151 conferred on an individual standing to sue under the HWMA, even if that particular individual's interests had not been harmed.[8]

On February 22, 2005, this Court issued the following order:

> On the Court's own motion, the June 24, 2004 opinion is hereby VACATED. In *Nat'l Wildlife Fed'n v Cleveland Cliffs Iron Co*, 471 Mich 608, 628-632; 684 NW2d 800 (2004), the Michigan Supreme Court held that members of a conservation group, supported by affidavits and expert opinion on causation, had alleged sufficient injury to establish standing to sue under the Michigan Environmental Protection Act (MEPA), MCL 324.1701 *et seq*. In the instant case, plaintiffs' claims under MCL 324.20135(3)[9] were not supported by affidavit or expert opinion, and failed to establish sufficient injury or causation. Accordingly and pursuant to *Cleveland Cliffs, supra*, the trial court properly granted summary disposition in favor of defendants on count three of plaintiffs' amended complaint, and this Court's conclusion to the contrary in the June 24, 2004 opinion was palpably erroneous. A new opinion is attached.

In the new opinion, this Court acknowledged *Nat'l Wildlife*, held that plaintiffs failed to establish standing

---

[8] This Court found that the trial court should have granted summary disposition of count III with respect to the attorney defendants because the complaint did not allege that those defendants violated the HWMA. The trial court found that count III properly alleged a cause of action against the developer defendants, Fifth Third, Dykema Excavators, the city, and Logie.

[9] MCL 324.20135(1) is the standing provision in the ERA. Count III of plaintiffs' amended complaint was not based on this provision; rather, count III alleged violation of the HWMA, and claimed standing under MCL 324.11151.

to sue under MCL 324.11151, and affirmed the trial court's dismissal of count III of plaintiffs' complaint.[10]

Plaintiffs moved for reconsideration of this Court's February 22, 2005, opinion and order, arguing that this Court lacked jurisdiction to vacate the June 22, 2004, decision, and asserted that because proceedings in the trial court had been reopened by virtue of the June 22, 2004, decision, this Court should have taken those proceedings into consideration.[11] Defendants opposed the motion for reconsideration.

On May 5, 2005, this Court issued the following order (Judge WILDER concurred in the result only):

> The Court orders that the plaintiffs-appellants' motion for reconsideration is granted. The Court's opinion issued in these consolidated cases on February 22, 2005, is hereby vacated inasmuch as this Court did not have jurisdiction to issue that opinion.

---

[10] This opinion was slated to appear in this Court's official reports at 265 Mich App 264 (2005), but, for reasons that will be explained below, was vacated and did not so appear.

[11] On October 22, 2004, the individual plaintiffs filed a second amended complaint naming 900 Monroe, 940 Monroe, Pioneer, Fifth Third, Dykema Excavators, Superior Environmental Corporation, and the city as defendants, and alleging that these defendants violated the HWMA. Tingley and Tingley, III, submitted affidavits in which they alleged that they personally observed defendants moving materials believed to contain hazardous waste from the B&G site adjacent to the building in which they worked; Tingley, III, averred that he came into direct contact with hazardous waste materials via dust clouds, etc. Plaintiffs also submitted an affidavit from Robert Hayes, a professional geologist, who averred that he reviewed documents related to the B&G site, and who opined that soil contaminated by hazardous waste presented a risk to those persons exposed to it. Various defendants moved for summary disposition of plaintiffs' claim under the MHWA, arguing that plaintiffs lacked standing to sue under the standard set out in *Nat'l Wildlife*. The trial court denied the motions with respect to Tingley and Tingley, III, but granted it with respect to Bradley.

The Court furthers [sic] orders that this Court's opinion issued on June 24, 2004, in these consolidated cases is reissued and reinstated as of the date of the Clerk's certification of this order, and is the opinion of the Court.

The Court further orders that this Court's opinion issued on June 24, 2004, in *Tingley v Kortz*, 262 Mich App 583 (2004), is unaffected by any order that has been entered in the consolidated cases referenced here. [*Tingley v 900 Monroe, LLC*, 266 Mich App 801 (2005).]

In its revised opinion, this Court held, as it had in its initial opinion, that MCL 324.11151 conferred standing on an individual to sue under the HWMA, even if that individual did not assert an injury to his or her particular interests. *Tingley v 900 Monroe, LLC*, 266 Mich App 233, 249-251 (2005).

The developer defendants, the city, Logie, and Dykema Excavators filed applications for leave to appeal to our Supreme Court, arguing that this Court erred by vacating its February 22, 2005, opinion on the basis of an erroneous legal conclusion that it lacked jurisdiction to issue the opinion; that a plaintiff lacks standing to sue under the HWMA unless he or she satisfies the traditional requirements of standing, including a particularized injury; and that on the facts of this case, plaintiffs lacked standing to sue under the HWMA.

On April 7, 2006, our Supreme Court issued the following order:

Pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we vacate the May 5, 2005, Court of Appeals judgment and the June 24, 2004, Court of Appeals judgment, and we remand this case to the Court of Appeals for reconsideration in light of *National Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608 (2004), and plain-

tiffs' second amended complaint. . . . We do not retain jurisdiction. [*Tingley v Wardrop*, 474 Mich 1104 (2006).][12]

Thus, on remand, this Court is charged with reconsidering plaintiffs' argument that they have standing to sue under the HWMA in light of *Nat'l Wildlife* and the allegations in plaintiffs' second amended complaint. The order consolidating the appeals was vacated to allow Docket No. 243171 to be considered separately on remand.

In *Nat'l Wildlife*, the plaintiffs National Wildlife Federation and the Upper Peninsula Wildlife Council, on behalf of their members, filed a petition with the Department of Environmental Quality (DEQ) to prevent the defendants Cleveland Cliffs Iron Company and Empire Iron Mining Partnership from expanding mining operations at the Empire Mine. The DEQ, which had issued a permit authorizing the expanded operations, dismissed the petition on the ground that the plaintiffs lacked standing. The circuit court affirmed the DEQ's decision, and this Court denied leave to appeal. The plaintiffs then filed an action in circuit court pursuant to the Michigan Environmental Protection Act (MEPA), MCL 324.1701 *et seq.*, seeking injunctive relief. Section 1701(1) of MEPA, MCL 324.1701(1), provides:

> The attorney general or any person may maintain an action in the circuit court having jurisdiction where the alleged violation occurred or is likely to occur for declaratory and equitable relief against any person for the protec-

---

[12] Although the Supreme Court referred to this case using the name of a different defendant, it is the same case as *Tingley v 900 Monroe, L.L.C.*, *supra*.

tion of the air, water, and other natural resources and the public trust in these resources from pollution, impairment, or destruction.

The circuit court denied the plaintiffs' request for an injunction, ruling that they lacked standing. This Court reversed, holding that because MCL 324.1701(1) conferred standing upon "any person" to bring suit, the plaintiffs need not satisfy any further requirements.[13] Our Supreme Court granted leave to appeal, limited to the issue "whether the Legislature can by statute confer standing on a party who does not satisfy the judicial test for standing. See *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726 (2001)." *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 468 Mich 944 (2003).

In *Nat'l Wildlife*, our Supreme Court stated that standing consists of the following elements:

"First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... traceable to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " [*Nat'l Wildlife, supra*, 471 Mich at 628-629, quoting *Lee, supra*, 464 Mich at 739, quoting *Lujan v Defenders of Wildlife*, 504 US 555, 560-561; 112 S Ct 2130; 119 L Ed 2d 351 (1992) (citations omitted).]

A plaintiff's pleadings must include general allegations that injury will result from the defendant's conduct.

---

[13] *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, memorandum opinion of the Court of Appeals, issued June 11, 2002 (Docket No. 232706).

Thereafter, if the defendant seeks summary disposition, the plaintiff must support the allegations of injury with documentation. *Nat'l Wildlife, supra,* 471 Mich at 631.

The *Nat'l Wildlife* Court noted that organizations such as the plaintiffs had standing to bring suit on behalf of their members where those members would have standing as individuals. *Id.* at 629. The *Nat'l Wildlife* Court further held that because the plaintiffs in that case presented affidavits from three individual members stating that the defendants' mining activities would interfere with their recreational enjoyment of their property, and, in one case, that defendants' activities had damaged his well, the plaintiffs had demonstrated sufficient injury to their members to establish standing. *Id.* at 630.

In this case, in their second amended complaint, plaintiffs alleged that defendants removed soil and water contaminated with hazardous waste from the B&G site and transported the soil to a water filtration plant; that Pioneer retaliated for the plaintiffs' reporting of defendants' violations of the HWMA by dumping contaminated soil on vehicles owned by Tingley and Bradley; that defendants violated the HWMA by failing to pay dumping fees, establishing treatment, storage, and disposal facilities at the B&G site and the filtration plant without a permit from the DEQ, operating the facilities without an operating license from the DEQ, and failing to comply with DEQ regulations for transporting hazardous waste, among others; and that defendants' violations of the HWMA resulted in damage, including causing human exposure to hazardous substances at levels considered unsafe by state standards, contamination of the filtration plant, contamination of other sites, release of contaminated substances into groundwater and the city's sewer system, and the loss

of landfilling fees. Plaintiffs sought injunctive relief prohibiting defendants from releasing any further hazardous substances and requiring defendant to clean up any site contaminated by the hazardous waste, sought to require defendants to pay $25,000 into the state's general fund for each violation of the HWMA and for each day of noncompliance in the case of continuing violations, and sought to require defendants to pay costs and fees, including attorney fees.

MCL 324.11151(1), the citizen suit provision of the HWMA, provides in pertinent part:

> The attorney general or a person may commence a civil action against a person, the department, or a health department certified under section 11145 for appropriate relief, including injunctive relief for a violation of this part including a corrective action requirement of this part, or a rule promulgated under this part.

Pursuant to the holding in *Nat'l Wildlife*, a plaintiff seeking to maintain an action under the HWMA must satisfy the judicial test for standing, notwithstanding the general language of MCL 324.11151(1). *Nat'l Wildlife, supra,* 471 Mich at 621.

We conclude that the allegations in plaintiffs' second amended complaint do not support a finding that plaintiffs had standing to bring suit against defendants under the HWMA, and, accordingly, conclude that plaintiffs' action must be dismissed. Plaintiffs' second amended complaint alleges generally that actions taken by defendants named therein violated various provisions of the HWMA, and that those actions resulted in the contamination of the environment and human exposure to hazardous substances. However, in their affidavits submitted in opposition to defendants' motions for summary disposition, plaintiffs did not allege

or make any showing that defendants' actions resulted in actual, particularized injury to them, that a causal connection existed between defendants' actions and any injuries, and that it was likely that those injuries would be redressed by a favorable decision. The allegations in plaintiffs' second amended complaint and in plaintiffs' affidavits submitted in opposition to defendants' motions for summary disposition did not establish the three elements of standing. *Id.* at 628-629.

Plaintiffs' second amended complaint alleged also that Pioneer dumped contaminated soil on vehicles owned by Tingley and Bradley in retaliation for plaintiffs' reporting of defendants' illegal activities. Viewing this allegation in a light most favorable to plaintiffs, it states a particularized injury; however, plaintiffs have not shown that it is likely that this particular injury would be redressed by a decision in their favor to the effect that defendants violated the HWMA. *Id.*

In light of the requirements for standing articulated in *Nat'l Wildlife* and the allegations in plaintiffs' second amended complaint, plaintiffs have not demonstrated that they have standing to sue under the HWMA. Accordingly, we remand this matter to the trial court for dismissal of plaintiffs' second amended complaint in its entirety. We do not retain jurisdiction.

METER, P.J. I concur in the result only.

BORRELLO, J. (*dissenting*). The majority's opinion accurately encapsulates the facts surrounding this case and the order of our Supreme Court for remand. However, because I disagree with the majority's assertion that the existence of "a particularized injury" has not been met as that term has been defined in our Supreme Court's opinion in *Nat'l Wildlife Federation v*

*Cleveland Cliffs Iron Co,* 471 Mich 608; 684 NW2d 800 (2004), I respectfully dissent.[1]

In *Nat'l Wildlife, supra,* Justice MARKMAN, writing for the majority, espoused a concern that, irrespective of legislative intent, the judiciary, in each case presented to it, must retain judicial requirements for standing. Couching this concern in the concept of "judicial power," Justice MARKMAN opined that while the Legislature may grant standing to individuals to bring actions under the Michigan environmental protection act (MEPA), MCL 324.1701 *et seq.,* the judiciary retains the authority to decide whether the individual or individuals who fostered the action meet the tests for judicial standing set forth in *Lee v Macomb Co Bd of Comm'rs,* 464 Mich 726; 629 NW2d 900 (2001). Justice MARKMAN's insistence that litigants satisfy the judicial test for standing was grounded, in part, on his concerns that

> [i]f the Legislature were permitted at its discretion to confer jurisdiction upon this Court unmoored from any genuine case or controversy, this Court would be transformed in character and empowered to decide matters that have historically been within the purview of the Governor and the executive branch. If there is dispute over the manner in which the Governor is enforcing or administering a law, such dispute, in the normal course, must be resolved through the executive process. If there are citizens who believe the Governor is wrongfully or inadequately enforcing or administering the state's consumer protection or occupational safety or worker's compensation or revenue laws, it is their right to petition or lobby the Governor in order to alter these policies. It is also the right of such

---

[1] The conclusions of the lead opinion are somewhat difficult to ascertain as the lead opinion stated that the "plaintiffs did not allege or make any showing that defendants' actions resulted in actual, particularized injury to them," while in the next paragraph concluding that "[v]iewing this allegation in a light most favorable to plaintiffs, it states a particularized injury. . . ." *Ante* at 346-347, 347.

citizens to petition or lobby the Legislature in order to cause them to alter these laws. Finally, of course, it is the right of citizens to participate in the channels of public debate, and in the political processes, in order to influence public policies, or to place in public office persons who are more accommodating to their points of view. Unless there is an individual who has personally been injured by the Governor's enforcement or administration of these laws, it is not normally the role of the judicial branch to monitor the work of the executive and determine whether it is carrying out its responsibilities in an acceptable fashion. That the Legislature—perhaps even with the acquiescence of the executive—has purported to impose this role upon the judicial branch does not alter this constitutional reality. [*Nat'l Wildlife, supra* at 622-623.]

A common theme throughout Justice MARKMAN's opinion is the concern that courts may only decide cases where there is an actual controversy, which begins by finding that an individual or groups have suffered an "injury in fact."

In this case, plaintiffs seek relief through their first amended complaint for violations of the environmental response act (ERA), MCL 324.20101 *et seq.*, and the hazardous waste management act (HWMA), MCL 324.11101 *et seq.*[2] MCL 324.11151(1) provides:

If the department finds that a person is in violation of a permit, license, rule promulgated under this part, or requirement of this part including a corrective action requirement of this part, the department may issue an order requiring the person to comply with the permit, license, rule, or requirement of this part including a corrective action requirement of this part. *The attorney general or a person may commence a civil action against a person,* the

---

[2] Plaintiffs also raise myriad other issues in their 44-page first amended complaint. However, for purposes of this appeal, we are limited to a discussion regarding plaintiffs' claims arising from MCL 324.20101 (ERA) and, more specifically, MCL 324.11101 (HWMA).

department, or a health department certified under section 11145 for appropriate relief, including injunctive relief for a violation of this part including a corrective action requirement of this part, or a rule promulgated under this part. An action under this subsection may be brought in the circuit court for the county of Ingham or for the county in which the defendant is located, resides, or is doing business. The court has jurisdiction to restrain the violation and to require compliance. In addition to any other relief granted under this subsection, the court may impose a civil fine of not more than $25,000.00 for each instance of violation and, if the violation is continuous, for each day of continued noncompliance. A fine collected under this subsection shall be deposited in the general fund of the state. [Emphasis added.]

Thus, the Legislature conferred on individuals the right to commence an action pursuant to the HWMA. However, Justice MARKMAN's opinion makes clear that our inquiry into whether a party has standing does not end with a legislative grant of standing. According to Justice MARKMAN, to allow the Legislature to dictate standing to the courts would be tantamount to a relinquishment of this Court's constitutional authority to exercise its "judicial powers." As his majority opinion noted,

we agree with the United States Supreme Court in *Lujan v Defenders of Wildlife*, 504 US 555, 578; 111 S Ct 2130; 119 L Ed 2d 351 (1992), which, although holding, as *Lee* does, that standing is of constitutional dimension, proceeds to observe that "[n]othing in this contradicts the principle that 'the . . . injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.' " This is affirmed in the concurring opinion of Justice Kennedy, joined by Justice Souter, in which they similarly observe, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before,

and we do not read the Court's opinion to suggest a contrary view." [*Nat'l Wildlife, supra* at 612 n 4 (citations omitted).]

In this case, it is my opinion that the Legislature has created a cause of action premised on a violation of the HWMA. In order to discern whether a particularized injury has occurred, another issue alluded to, but not directly addressed in *Nat'l Wildlife*, needs to be addressed. That is: Can the Legislature create a particularized injury without interfering with the constitutional mandate of the court to exercise its judicial authority to make a determination of standing? Because I would hold that when the Legislature exercises its traditional role of creating causes of action, it can at the same time announce a particularized injury without interfering with the court's traditional role of ascertaining standing, I would affirm the decision of the trial court.

Initial inquiry into whether plaintiffs have suffered an actual injury is when the concepts of judicial activism and judicial restraint, discussed in the majority and dissenting opinions in *Nat'l Wildlife,* come to the forefront. Where the Legislature has opened the courthouse doors, the courts should be constrained in their use of the standing doctrine to swing that door shut. We need to emphasize that a court's inquiry into standing occurs before any discovery and perhaps even before the filing of any statements or affidavits. Accordingly, deference to the plaintiff must be given when courts initiate inquiry into whether a particularized injury has occurred, lest they overstep their judicial power and begin to legislate what types of actions will or will not curry favor from our Court.

Hence, applying these principles to the action before us, I would find that plaintiffs have standing to bring this action.

For Justice MARKMAN, it is readily apparent that the commencement of an "environmental" action does not divest the court of its constitutional obligation to engage in an initial inquiry to discern whether a party has standing. I concur. However, I also glean from the dissents of Justices WEAVER and KELLY in *Nat'l Wildlife* that all citizens are *potentially* injured by violations of our state's laws enacted to protect our shared environment. I share the dissenting justices' assertion of the heightened potential for injury in actions commenced pursuant to the environmental protection laws of this state, while at the same time recognizing Justice MARKMAN's requirement that the injury must be particularized and concrete.

With these concepts in mind, I would hold that adoption of MCL 324.11101 creates a particularized injury when the HWMA is violated. Contrary to our traditional concepts of "injury," which are embedded in an economic, social, or physical loss, a particularized injury can arise, as it does in this case, from a violation of a statute. The fact that the injury is specially laid out by the Legislature does not eliminate, nor does it interfere with, this Court's judicial authority to determine standing. The statute confers on any person the status of an enforcer of the act. Thus, the injury being the violation of the act, any person, such as plaintiffs, may bring a civil action for enforcement of the act.

Next, the lead opinion contends that even assuming plaintiffs have made a showing of a particularized injury, they have failed to demonstrate that those injuries would be redressed by a favorable decision. Absent an ability to foretell the future, it is difficult, if

not impossible, for courts to engage in any analysis regarding the likely outcome of a case premised solely on the pleadings. Accordingly, I would hold that the requirement that plaintiffs must demonstrate that their allegations will be "redressed by a favorable decision" requires this Court to find merely that plaintiffs have set forth in their pleadings sufficient facts to support the elements of their specific cause of action. In this case, plaintiffs set forth numerous facts that give rise to an inference of fact that defendants violated the HWMA. Accordingly, I would remand the matter to the trial court and allow plaintiffs to proceed with their claims that were the subject of this appeal.